UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:

Terry Toal,

                Debtor.

---------------------------------------------------------x
Terry Toal,

                Plaintiff,

    v.

Chase Home Finance LLC,

                Defendant.
---------------------------------------------------------x

Chapter 7

Case No.: 10-72783-478

Adv. Pro. No. 10-8613-478

## **MEMORANDUM DECISION AND ORDER**

*Appearances:*

Stuart P. Gelberg, Esq.
*Attorney for the Plaintiff*
600 Old Country Road
Suite 410
Garden City, New York 11530


Steven J. Baum, PC
*Attorneys for Defendant*
By: Natalie Grigg, Esq.
Carrie Rhea McElroy, Esq.
220 Northpointe Parkway
Suite G
Amherst, New York 14228


Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

Before the Court is the issue of the value of the Plaintiff's real property against which Defendant JPMorgan Chase Bank, N.A., successor in interest from the Federal Deposit Insurance Corporation as receiver for Washington Mutual Bank[1], holds a second mortgage lien. The Court has jurisdiction pursuant to 28 U.S.C. § 1334(a) and (b). This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O) and 11 U.S.C. § 506. The following constitutes the Court's finding of fact and conclusions of law as mandated by Bankruptcy Rule 7052.

## FACTS

The Plaintiff filed for chapter 7 bankruptcy relief on April 19, 2010 (the "Petition Date"). The Plaintiff and his non-debtor spouse are joint owners of real property located at 17 Faculty Lane, Farmingville, New York 11738 (the "Property"). The Property is located on 0.32 acres of land and is in close proximity to major roads and the highway. It is north of the Long Island Expressway and west of Nicholls Road/Country Road 97. The house is in average condition and built on a slab. It has a total of 8 rooms and a 1 car garage. The Property also has an in-ground swimming pool.

There is a first mortgage against the Property held by Chase Bank, N.A. which has an outstanding balance of $315,503.75 as of the Petition Date. The Defendant holds the second mortgage against the Property with an outstanding balance of approximately $61,300 as of the Petition Date.

---

[1] JPMorgan Chase Bank, N.A., successor in interest from the Federal Deposit Insurance Corporation as receiver for Washington Mutual Bank, has appeared as the Defendant in this adversary proceeding on the basis that it was wrongly sued by Plaintiff as Chase Home Finance, LLC and that it is the proper party defendant.

On October 8, 2010, the Plaintiff commenced this adversary proceeding seeking a determination that the second mortgage lien against the Property is wholly unsecured pursuant to 11 U.S.C. § 506(a) and that such second mortgage lien must be void pursuant to 11 U.S.C. § 506(d). Plaintiff argues that the second mortgage lien is wholly unsecured because the value of the Property is less than the amount due on the first mortgage, and thus there is no equity for the second mortgage lien to attach. In its Answer to the Complaint, Defendant disputes, *inter alia*, the value of the Property and argues that there exists some equity in excess of the first mortgage lien balance and as such the second mortgage lien is partially secured and cannot be stripped off. Accordingly, Defendant requests that the Complaint be dismissed. An evidentiary hearing was held on April 11, 2011 on the issue of the value of the Property (the "Hearing"). Certified appraisers testified at the Hearing on behalf of each opposing party and both appraisers were qualified as an expert on residential appraisals. Both appraisers conducted an inspection of the Property.

At the Hearing, the Plaintiff submitted an appraisal prepared by Stephen Sikorski as of February 24, 2011 who valued the Property at $300,000 to $305,000. Mr. Sikorski described the house on the Property as being an expanded ranch with 4 bedrooms and 2 bathrooms. The house is a two story structure. He testified that he looked at comparable sales of other real properties with expanded ranch houses built on slabs that were located from 0.07 miles to 2.36 miles from the subject Property. Of the comparables used, two were more than 2 miles from the Property located to the east of Nicolls Road, three were a little over 1 mile from the Property to the north and only one was within 1 mile of the Property. The appraiser noted that there were a lot of short sales and foreclosures in the area. He indicated that the Property was in a stable market but

the real estate situation could decline.

Defendant submitted an appraisal by Anthony F. Vosilla who valued the Property at $350,000 as of December 31, 2010 also using the comparable sales approach.  Mr. Vosilla testified that he contacted the homeowners and was told that the home was a colonial with five bedrooms and two bathrooms, one of which was in the process of being renovated.  He measured the gross living space to 2,160 square feet.  While the Property is located in Farmingville, Mr. Vosilla limited his comparables to the smaller subdivision of Farmingville within 1 mile of where the Property was located.  Mr. Vosilla testified that the area where the Property is located is unique and the properties outside of the area were not the same.  He pointed out that this particular portion of Farmingville is more desirable in that the lots are larger and enjoys more of its own flavor as a neighborhood than do other areas north and east.  In his appraisal, Mr. Vosilla noted that the hamlet where the Property is located is in a small area of Farmingville between two other hamlets and all three of these hamlets share the same school district.

Both appraisals included one comparable within 1 mile of the Property located at Coed Lane which consists of a 2,136 to 2,236 sq. ft. ranch also built on a slab.  The Coed Lane Property sits on 0.35 acres of land.  The size of the land and the gross living area are similar to those of the Debtor's Property.  The Coed Lane property also has a 1 car garage and an in-ground swimming pool but is ten years older that the Debtor's house. The Coed Lane property sold for $335,000 on September 2, 2010.  Using the Coed Land property as a comparison, Mr. Vosilla made a negative adjustment of only $4,500 after taking into consideration that the Coed Lane Property had a fireplace, deck, and an extra room that the Debtor's Property did not have, the condition of the property and the date when the Coed Lane Property was sold.

Mr. Sikorski adjusted the sales price downward by $4,000 from the sales price of the Coed Land property because the Debtor's property has fewer rooms than the Coed Lane Property. In addition, Mr. Sikorski deducted $16,500 because he mistakenly measured the Debtor's Property as having only 1,760 square footage of gross living area rather than the little more than 2,000 square footage it actually has. Although Mr. Sikorski sought to submit a revised appraisal showing the correct amount of gross living area, Mr. Sikorksi only increased his valuation of the property by $5,000 to $305,000 for the increase in square footage. While Mr. Sikorksi testified that he believed that the sales price of the Coed Lane property is higher than the actual market value of that property because there was a seller's concession, he does not have any evidence of what the concession was or the value of the concession given to the purchaser.

The Plaintiff argues that the value of the Debtor's Property is less than the amount of the first mortgage because in a motion for relief from stay filed by the Defendant with respect to its first mortgage, the Defendant used the Debtor's valuation of the Property listed in the Debtor's bankruptcy schedules which was $200,000. The Court notes that the Defendant's use of the Debtor's valuation in their bankruptcy schedules for purposes of a motion for relief from stay is not probative and is not evidence in this case as both appraisals submitted by the parties show substantially higher values than the value given by the Debtor in his bankruptcy schedules.

## DISCUSSION

Pursuant to 11 U.S.C. § 506:

(a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the

> case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

***

> (d)To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless--
>
>> (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title....

11 U.S.C. § 506(a) and (d).

This Court has previously held in *In re Lavelle*, No. 09-72389, 2009 Bankr. LEXIS 3811 (Bankr. E.D.N.Y. Nov. 19, 2009), a wholly unsecured subordinate mortgage lien is not an allowed secured claim pursuant to 11 U.S.C. § 506(a) if the value of the real property is less than the senior mortgage lien.

In determining the value of the real property, the Court notes that the valuation of assets is not an exact science and must be done on a case by case basis. *See e.g., Karakas v. Bank of N.Y. (In re Karakas)*, 2007 Bankr. LEXIS 1578, 16-17 (Bankr. N.D.N.Y. May 3, 2007); *In re CGE Shattuck*, 2000 Bankr. LEXIS 1783, *3 (Bankr. D.N.H. 2000); *In re Melgar Enter., Inc.*, 151 B.R. 34, 39 (Bankr. E.D.N.Y. 1993). "The usual factors that are considered in determining the value of a property are location, lot size, square footage, condition and age." *In re Stromer*, No. 05-12503, 2006 Bankr. LEXIS 4089, * 16 (Bankr. D.N.J. April 10, 2006). Under the sales comparison approach which is typically used for evaluating residential property, the appraiser conducts a search of real properties similar to the subject property to find properties in similar

situations to determine the value of the property in question. However, as each real property is unique, the appraiser will need to make adjustments to account for the differences between the subject property and the comparable properties chosen in order to determine the appropriate value of the subject property. *See In re Maple*, No. 07-70820, 2008 Bankr. LEXIS 2562, 6-7, n.2, (Bankr. D. Vt. Aug. 8, 2008)(*quoting In re SM 104 Ltd.*, 160 B.R. 202, 212 (Bankr. S.D. Fla. 1993). While appraisers are called upon to use their judgment as to the best statistics and facts to utilize and to make the appropriate adjustments in accounting for the differences, it is the role of the Court to sift through the appraisals and testimonies and make a determination as to the "accuracy and credibility" of the appraisers. *See In re Miami Beach Hotel Investors LLC*, 204 B.R. 532, 535 n. 4 (Bankr. S.D. Fla. 2004).

The primary difference between the two appraisals before the court was the location of the comparables used to determine the subject Property's appraised value. After reviewing the appraisals and giving due consideration to the testimonies of the appraisers, the Court finds that both appraisers were experienced in their field and have conducted appraisals of residential properties in the Farmingville area. However, the Court finds Mr. Vosilla's appraisal to be a better determination of the value of the subject Property. His appraisal limited his comparables to those properties located within the same hamlet as that of the subject Property and share the same school district as the other comparables. "The preferred location for comparable properties is the immediate neighborhood or subdivision where the subject is located." *In re Jones*, No. 03-84129, 2004 Bankr. LEXIS 143, *6 (Bankr. C.D. Ill. Feb. 5, 2004)(citing Miller and Gallagher, Residential Real Estate Appraisal 233 (3d ed. 1998)). All the sales comparables within 1 mile of the subject Property were sold or listed for $335,000 or higher. Taking into account the

differences between various properties, the average value of the properties within 1 square mile

averaged $350,000.  In addition, the Court finds that the downward adjustment of more than

$16,000 in the sales comparable for the differences in the gross living area between the subject

Property and the Coed Lane Property to be excessive even after Mr. Sikorski modified his

calculation of the gross living area.  Accordingly, the Court concludes that the fair market value

of the Debtor's Property is approximately $350,000.

As a result, the fair market value of the Property is greater than the outstanding principal

on the first mortgage as of the Petition Date and the Defendant's second mortgage lien is

partially secured.  This situation differs from *Lavelle* as the Defendant's second mortgage lien is

not wholly unsecured.  Accordingly, sections 506(a) and (d) of the Bankruptcy Code do not

apply and Defendant's  second mortgage lien cannot be voided.  As the Court has already

determined that sections 506(a) and (d) do not apply, the Court does not need to address the

Defendant's alternative arguments.

## CONCLUSION

Based upon the foregoing, the Court finds the Plaintiff's Complaint must be dismissed.

So Ordered.



**Dated: Central Islip, New York**
      **August 15, 2011**

**Dorothy Eisenberg**
**United States Bankruptcy Judge**